BOWLES, Adm'r Office of Price Administration, v. HUFF et al.

No. 10737.

Circuit Court of Appeals, Ninth Circuit.

Dec. 27, 1944.

W. Dunlap Cannon, Jr., Thomas Ryan, and David C. Dunlap, Attys., OPA, all of San Francisco, Cal., and Thomas I. Emerson, Deputy Adm'r, for Enforcement, Felming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and A. M. Dreyer, Atty., OPA, all of Washington, D. C., for appellant.

Hugh K. McKevitt and Newell J. Hooey, both of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a final judgment of the District Court dismissing an action brought by the Price Administrator to enjoin the defendants from violating the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., and the Rent Regulation for Housing issued under Section 2(b) of that Act. The District Court gave no opinion.

The pertinent sections of the Act involved in this appeal are Sections 4(a) and 205(a).

The Rent Regulation for Housing (8 F. R. 7322) issued under Section 2(b) of the Act specify the "maximum rent date" and the "effective date of regulation" for each Defense-Rental Area. The maximum rent date for the San Francisco Defense-Rental Area is March 1, 1941 and the effective date of the Regulation is July 1, 1942.

The complaint filed by the Administrator on September 9, 1943 was in four counts. The first count alleged that since July 1, 1942, defendant had, in violation of the Regulation, demanded and received for the use and occupancy after July 1, 1942, of housing accommodations within the San Francisco Bay Defense-Rental Area, higher rents than the maximum rents permitted by the Regulation. The second count charged that the defendants had rented and offered for rent housing accommodations within the same Area without having filed registration statements as required by the Regulation correctly setting forth maximum rents for the housing accommodations. The third and fourth counts alleged that the defendants were attempting and threatening to evict tenants from housing accommodations within the same Area in violation of the provisions of the Regulations. The complaint prayed that the defendants be enjoined and restrained from demanding and receiving higher rents than those permitted by the Regulation, and from evicting or attempting to evict tenants in violation of the Regulation. The complaint also asked that the defendants be required to file registration statements correctly setting forth the maximum rents for housing accommodations rented by them. The answer of the defendants denied only the jurisdiction of the court and the material allegations of the third and fourth counts.

This appeal is taken only as to the District Court's dismissal of the complaint as to the first two counts. The appellant does not challenge the propriety of the District Court's dismissal of the complaint as to the third and fourth counts, and they are not considered.

In regard to the appellant's case upon the first two counts in the complaint, it appears that an investigator for the Office of Price Administration was placed on the stand and a statement of the rents charged by the appellees on March 1, 1942, and a statement of the rents charged by appellee for the same housing accommodations from July 1, 1942 to August, 1943 were introduced. At this point in the case, counsel for the defendants stated:

"Mr. Hooey: May I state this: that we have admitted the fact that the rent charged after March 1st was higher than the rent provided by the Fair Rent Control Act. There are certain explanations which we have to make, that I understand your Honor is not concerned with, that those explanations have to be made to the OPA in the form of a petition as to whether they will permit us to charge higher rates than on March 1st. I have admitted all these allegations and see no purpose in going into it. I am consenting that the Court can make its order enjoining us from charging anything over and above what the Fair Rent Control Act provides."

The Price Administrator presents two arguments in his appeal: First, that in view of Sections 4 (a) and 205 (a) of the Act the failure of defendants' counsel to deny the allegations in the first two counts, his admission in open court that the defendants had previously violated the Regulation referred to in the first two counts and his consent to an injunction as to them, established a prima facie case, and that therefore the District Court did not exercise a sound judicial discretion in dis-

missing the complaint and denying the injunction sought by appellant on the first two counts. Second, that it was reversible error for the court to dismiss the complaint and deny the equitable relief demanded on the first two counts, in view of the fact that the defendant consented through counsel, in open court, to the granting of the relief so prayed for by the Administrator.

■ Appellant's brief, in effect, narrows the question presented to this court, to the issue of whether the lower court was justified in refusing to grant an injunction, based on the first two counts. It is true that injunctive relief is authorized by statute, and in this particular class of cases, allegations and proof of absence of an adequate remedy at law, and of the presence of the element of irreparable injury, are not required to sustain a case.

The most important problem in the instant case, which involves the matter of judicial discretion in the granting or withholding of injunctive relief, was the subject of discussion in the recent case of Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587 where the Court said: 321 U.S. at page 322, 64 S.Ct. at page 588.

"The question in this case is whether the Administrator, having established that a defendant has engaged in acts or practices violative of § 4 of the Act is entitled as of right to an injunction restraining the defendant from engaging in such acts or practices or whether the court has some discretion to grant or withhold such relief."

In the Hecht case, numerous violations both as respects prices and records, were discovered. But the record in that case convinced the Supreme Court that the defendant, the Hecht Company, had displayed good faith and diligence in trying to correct the condition complained of. The trial court in that case found that an injunction would not insure better compliance and would be unjust and not in the public interest and accordingly dismissed the complaint. The Circuit Court of Appeals for the District of Columbia, 137 F. 2d 689 reversed the judgment of the lower court, 49 F.Supp. 528, and in so doing expressed the view that the statute § 205(a) required the issuance of an injunction "or other order" as a matter of course, once violations were found. Commenting on the seeming mandatory character of § 205 (a), the Supreme Court said:

"We agree that the cessation of violations, whether before or after the institution of a suit by the Administrator, is no bar to the issuance of an injunction under § 205 (a). But we do not think that under all circumstances the court must issue the injunction or other order which the Administrator seeks.

"It seems apparent on the face of § 205 (a) that there is some room for the exercise of discretion on the part of the court. * * * Thus it seems that § 205 (a) falls short of making mandatory the issuance of an injunction merely because the Administrator asks it. * * * We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. * * * Hence we resolve the ambiguities of § 205 (a) in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect."

In the instant case, the trial court was advised by the testimony that there had been a rental overcharge on a tenant and his wife who so testified, which covered four months, and that around the end of this period, and during the month of March, 1943 a controversy arose between the landlord and these tenants over the excessive rentals which violated the OPA regulations. The rental matter was thereupon satisfactorily adjusted between these parties. As indicated, this suit was started on September 9, 1943. On the trial of the case defendants, through their counsel, stated that defendants had admitted the fact that the rent charged after March 1st was higher than the rent provided by the Fair Rent Control Act and consented that the court might make an order enjoining the defendants from charging anything

over and above what the Fair Rent Control Act provides. Thereafter the evidence and testimony in the case seem to have related almost entirely to the issues raised by counts three and four of the complaint which did not touch the question of legal rentals.

The trial court heard all of the testimony and thereupon refused injunctive relief and dismissed the case. An appellate court will not ordinarily interfere with the action of a trial court either in granting or withholding an injunction. A court of equity need not afford an injunction to prevent in the future that which in good faith has been discontinued before the commencement of a suit, in the absence of any evidence that the offense will, or is likely to be, repeated in the future. There should be some basis for an injunction besides suspicion or ungrounded fear that the defendant will repeat the wrong or wrongs in the future. In this case, it seems apparent that the evidence must have satisfied the trial court that appellees, in good faith, entertained no purpose to continue to exact rentals in excess of those sanctioned by OPA regulations. Good faith of the parties may not be decisive, but on the other hand, if made manifest, it may be a substantial element to be considered in an equity case. An equity court has the power "to mould each decree to the necessities of the particular case." Obviously, its decision in "any particular case" need not and should not tie its hands in the disposition of a subsequent case revealing a different state of facts calling for entirely different action.

We are deprived of the advantage of seeing and hearing the witnesses in this case and we cannot weigh with unerring accuracy the value attached by the trial court to the impressions stemming from trial experience. To attempt to do so in this case would be to substitute our judgment on issues of fact, for that of the trial court.

It was particularly within the province of the trial court to determine from a survey of all the facts and circumstances, whether, in the exercise of sound judicial discretion, an injunction should issue. From the record before us, we are not prepared to say that in this case the refusal of an injunction was such a clear abuse of judicial discretion as to call for a reversal. A decree of a district court, denying an injunction, should not be reversed unless shown to be contrary to some recognized rule of equity or be the result of an improvident exercise of judicial discretion.

Judgment affirmed.