**BOWLES, Price Administrator, v. McCRADY CONST. CO., PITTSBURGH, ALLEGHENY COUNTY, PA.**

Civil Action No. 4973.

District Court, W. D. Pennsylvania.

March 1, 1946.

Thomas F. Garrahan, Dist. Enforcement Atty., and Emerson Samuels and Allen S. Gordon, all of Pittsburgh, Pa., for plaintiff.

W. F. McCrady, Jr., of McCrady, Nicklas & Hirschfield, all of Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

This is a civil action brought by the Administrator of the Office of Price Administration against the defendant, McCrady Construction Company, under and pursuant to the provisions of Section 205 (a) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23, 765; 57 Stat. 566; Public Law 383, 78th Cong. 58 Stat. 632; Public Law 108, 79th Cong., 59 Stat. 306, 50 U.S.C.A. § 901 et seq.; Executive Order 9250, 7 F.R. 7871, and Executive Order 9328, 8 F.R. 4681, 50 U.S.C.A.Appendix § 901 note.

It is the contention of the plaintiff that the defendant knowingly violated Maximum Price Regulation No. 134, as amended (7 F.R. 3203 et seq.), and should be restrained by a permanent injunction as to future actions.

It was claimed by the defendant that the violation was merely technical and inadvertent, and was caused by the desire, on the part of the defendant, to accommodate the public at a time of emergency, and that the failure to file the price schedule promptly was due to lack of personnel and the pressure of other business. In addition thereto, the defendant claimed that it had complied with said Regulation prior to the filing of the complaint for injunctive relief, and that the defendant had fully complied with the provisions of said Regulation. It was further argued that nothing more than a mere suspicion or ungrounded fear on the part of the government exists that the defendant will continue or will permit a violation of said Regulation in the future.

This matter was presented for hearing before the court without a jury, and each of the parties to said proceeding have filed Suggested Findings of Fact and Conclusions of Law.

The Court, after hearing and consideration of the Suggested Findings of Fact and Conclusions of Law together with the arguments presented by counsel for the party litigants, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. On and after May 11, 1942, there has been and remains in effect Maximum Price Regulation No. 134, as amended (7 F.R. 3203 et seq.), establishing maximum prices for the leasing or furnishing for use, construction or road maintenance equipment.

2. On and after July 1, 1943, Section 5 of Maximum Price Regulation No. 134, as amended, sets forth the procedure for establishing a maximum charge for operating and maintenance services.

3. On and after July 1, 1943, said Section 5 of Maximum Price Regulation No. 134 prohibits any person from receiving

payment for any operating and maintenance services, unless the supplier thereof has established a maximum charge therefor, by filing a report of his prices charged with the Office of Price Administration, Washington, D. C., and, where necessary, by having a charge approved or not disapproved by the Office of Price Administration, as provided by the aforesaid Maximum Price Regulation No. 134, as amended.

4. Under the provisions of the Emergency Price Control Act of 1942, 50 U.S.C. A.Appendix § 901, it is provided, inter alia, as follows:

"It is hereby declared to be in the interest of national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * * to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increase in prices; and to assist in securing adequate production of commodities and facilities; * * * and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes."

5. The defendant, during the period from December 14, 1944, to and including July 13, 1945, leased or furnished: for use construction or road maintenance equipment, namely, four machines to twelve divers customers in twenty instances and charged the aforesaid customers for operating and maintenance services and received payment therefor, before establishing a maximum price for the said operating and maintenance services, as required by Section 5 of Maximum Price Regulation No. 134, as amended.

6. On July 27, 1945, a duly authorized investigator of the Industrial Materials Unit of the Pittsburgh District Office of the Office of Price Administration, visited the premises of defendant in the course of his official duties and at that time was informed by the defendant that it had not filed for a price for operating and maintenance service charges under the provisions of Section 5 of Maximum Price Regulation No. 134, as amended.

7. On July 30, 1945, the same investigator visited the offices of the defendant and was informed at that time that defendant was preparing a price schedule for approval of operating and maintenance charges.

8. On August 2, 1945, defendant first made application to the Office of Price Administration, Washington, D. C., for approval of a specific price for operating and maintenance services.

9. On August 28, 1945, the Office of Price Administration, Washington, D.C., approved specific charges for operating and maintenance services, filed by defendant.

10. On September 25, 1945, a complaint for injunctive relief was filed against the defendant.

11. During the period from July 1942 to and including July 27, 1945, defendant was familiar with the provisions of Maximum Price Regulation No. 134, as amended.

12. That although defendant violated the provisions of Section 5 of Maximum Price Regulation No. 134, as amended, said violations were not willful or deliberate, nor with the purpose of flouting the regulations, nor in defiance of the law, but were actuated by a desire to accommodate certain of its customers and the public in times of emergency.

13. On and after August 2, 1945, to and including the date of the hearing, defendant was in complete compliance with the provisions of Maximum Price Regulation No. 134, as amended.

### Conclusions of Law

1. During the period from December 14, 1944, to and including July 13, 1945, the defendant violated the provisions of Maximum Price Regulation No. 134, as amended, in that it charged and received payment for operating and maintenance services on construction or road maintenance equipment, leased or furnished for use to divers customers, before establishing a maximum price therefor, as required by Section 5 of Maximum Price Regulation No. 134, as amended.

2. That the leasing or renting of equipment due to an emergency, or an accommodation to a customer or customers of the defendant, is no excuse for failing to comply with the provisions of Section 1(b)

and Section 5 of the Maximum Price Regulation No. 134.

3. The cessation of violations, whether before or after the institution of the suit by the Administrator of the Office of Price Administration, is no bar to the issuance of an injunction under Section 205(a) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23, 765; 57 Stat. 566; Public Law, 383, 78th Cong.; Public Law 108, 79th Cong.; Executive Order 9250, 7 F.R. 7871, and Executive Order 9328, 8 F. R. 4681.

4. That an amendment to Maximum Price Regulation No. 134, effective July 14, 1945, established dollars and cents ceiling prices for operating and maintenance charges on 90% of the equipment that would be owned, leased or rented by the defendant.

5. By the provisions of Amendment 19 to Maximum Price Regulation No. 134, it is unnecessary to comply with Section 1(b) of said Regulation except in about 10% of the cases where operating or maintenance equipment would be purchased by the defendant, and then leased or rented to third persons.

6. That the actions of the defendant in failing to comply with said Regulation were committed with full realization of the provisions of Section 5 of Maximum Price Regulation No. 134, as amended.

7. That there is no present reasonable likelihood of the defendant failing to comply with the provisions of said Regulation in the future, and the granting of an injunction against the defendant is not presently for the best interest of the public generally.

8. That the granting of an injunction is presently refused with the right, however, being given to the plaintiff, on reasonable notice to the defendant and a showing that the defendant has failed or neglected to continue to comply with said Regulation, or a showing that violations of the Act have been resumed, to again apply to the court for appropriate injunctive relief.

9. That the costs in the proceeding, which have accrued to date, are to be paid by the defendant.

## Discussion

The Office of Price Administration in its complaint averred that the defendant had violated the provisions of Maximum Price Regulation No. 134, since the effective date of said Regulation was May 11, 1942, and, more particularly, Section 1(b) and Section 5 of said Regulation No. 134, each of which became effective on July 1, 1943. It is, therefore, necessary to first consider the provisions of said Regulation:

a. Regulation No. 134 established maximum prices for the leasing or furnishing for use construction or road maintenance equipment.

b. Section 1(b) of said Regulation provided that on or after July 1, 1943, no person shall supply any operating and maintenance services or receive payment for any such services at a price in excess of the maximum charge established by said Regulation for such services, and no person shall agree, offer, solicit, or attempt to do any of said acts.

c. Section 5 of Regulation No. 134 sets forth the procedure for establishing a maximum charge for operating and maintenance services, and prohibits any person from receiving payment for any such service unless the supplier thereof has established a maximum charge therefor by filing a report of his prices charged with the Office of Price Administration, Washington, D. C., and, where necessary, by having a charge approved or not disapproved by the Office of Price Administration.

The Government contends, on the basis of said Regulation, that the defendant during the period from July 24, 1944 to and including July 30, 1945, violated said Regulation in the following particulars, to wit:

a. Charged and received payment for operating and maintenance services on construction or road maintenance equipment which was leased without establishing a maximum price.

b. That as a result of the failure to establish a maximum price, the Government cannot determine if the charges made by the defendant were excessive.

The Government then demanded the following injunctive relief:

Final injunction directed to the defendant, its agents, servants, employees, attorneys and all other persons in active concert or participation with them jointly and severally.

1. Directing defendant to establish maximum prices for operating and maintenance services on construction or road maintenance equipment leased or furnished for use during the period from October 1, 1944, to and including July 30, 1945, by

forthwith filing a report of their charges for approval with the Office of Price Administration, Washington, D. C., as required by the provisions of Section 5 of Maximum Price Regulation No. 134, as amended.

2. Restraining them from receiving payment for operating and maintenance services on construction or road maintenance equipment leased or furnished for use before establishing a maximum' price therefor as required by the provisions of Maximum Price Regulation No. 134, as amended.

3. Restraining them from leasing or furnishing for use construction or road maintenance equipment at prices in excess of the maximum prices therefor, as established by the provisions of Maximum Price Regulation No. 134, as amended.

4. Restraining them from doing or omitting to do or attempting to do or agreeing to do anything in violation of Maximum Price Regulation No. 134, as heretofore or hereafter amended or in violation of any regulation or order issued pursuant to the Act establishing maximum prices for the leasing or furnishing for use any construction or road maintenance equipment.

5. Granting such other and further relief as to the Court may seem just and proper.

In the trial of this proceeding, it developed that the defendant on August 28, 1945, was given approval of the specific charges for operating and maintenance services by the Office of Price Administration, Washington, D.C., and that the defendant furthermore was complying in every respect with said Regulation, so that the relief prayed for by the plaintiff would have application only as to future conduct or compliance by the defendant with said Regulation.

It appears that the defendant's business was that of building roads, highways, sewers, water lines, underground conduits, heavy excavations and heavy foundations.

In connection with the conducting of said business, the defendant acquired some fifty-five pieces of construction equipment, such as tractors, graders, angle dozers, cranes, hilifts, and others, and it was established that the defendant is not generally in the business of renting out its equipment. However, the defendant, during the month of December, 1944, did commence to lease or rent said equipment on a fully operated basis, that is, including an operator, fuel and lubrication, for emergency purposes and for the accommodation of certain customers and municipalities that did not have operators or ways to operate the machines.

Commencing on or about December 14, 1944, and continuing to about June 1, 1945, circumstances arose where as a result of a severe winter, snow storms, icy roads, and a hazardous fire, a demand was made on the defendant by twelve different persons, companies or municipalities to make available certain equipment to cope or meet unusual situations which could be considered Acts of God over which the parties desiring the use of the equipment of the defendant had no control.

From a realistic standpoint, it is conclusive that the defendant aided and, in fact, cured conditions which were most hazardous and in immediate need of attention, i.e.:

a. Furnishing aid to municipalities to correct conditions caused by a severe winter.

b. Opening of roads for employees to reach their work.

c. Movement of commodities needed for the war effort.

d. Assisting in the maintenance of transportation facilities, both passenger and freight service.

e. Protection of property rights and injuries to the person of those who had occasion to use the highways or streets of municipalities and state roads.

f. Protection of plants vital to the war effort, and making possible ingress and egress thereto.

If the defendant had not made available said equipment and facilities at the times it had been requested, certainly considerable inconvenience and substantial hardship would have been experienced by the public generally in so many ways that it is not possible to elaborate in detail, and, hence, the above references have been in general expression.

 The Act of Congress which authorized the adoption of the Regulation that gives rise to this proceeding provided as follows:

"It is hereby declared to be in the interest of national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent

speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * * to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; and to assist in securing adequate production of commodities and facilities; * * * and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes."

It is furthermore provided by Section 4 (a) of the Emergency Price Control Act that it is unlawful for any person to violate any regulation under Section 2(a), which sets forth as follows:

"Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

It is obvious that no exemption exists for exclusion from the provisions of said Regulation 2(a) or any other section or regulation of the Emergency Price Control Act, which would exonerate the defendant company from complying with the terms thereof.

■ Although the defendant company rendered invaluable services to the public generally and to the war effort when said equipment was rented or leased, the proceeding now being considered is one for injunctive relief. Its purpose is not in any degree to punish the defendant, but solely to protect the public. It is a police regulation of great scope and importance, and innocent non-conformity with the Price Control Act is as inflationary and as damaging to competitors and the public as guilty non-conformity.

It furthermore appears that on July 14, 1945, by Amendment 19 to Maximum Price Regulation No. 134, the Office of Price Administration established dollars and cents ceiling prices for operating and maintenance charges on the major items of equipment that the average contractor would own in ninety per cent of his business. This Regulation, therefore, dispensed with compliance to Section 1(b) of Maximum Price Regulation No. 134 by the defendant, except in about ten per cent of the cases where operating or maintenance equipment would be purchased and then leased or rented to third persons.

We then must consider the following questions:

1. What is the probable likelihood of the defendant failing to comply with Section 1(b) of Maximum Price Regulation 134 in the future?

2. Should the defendant be enjoined from violating a regulation where past violations have been discontinued?

It appears that a spot check was made by a representative of the Enforcement Division of the Office of Price Administration, at the place of business of the defendant on July 27 and July 30, 1945.

As a result of said investigation, it was learned that the defendant had not complied with Section 1(b) of Maximum Price Regulation No. 134, although the defendant had been aware of its provisions since July of 1942.

The defendant explains that as a result of the pressure of business, limitations on clerical help, the detailed ramifications involved in preparing the application, and the fact that no equipment had been leased prior to December of 1944 justifies its non-compliance.

Furthermore, the defendant filed its application on August 2, 1945, which was approved by the Office of Price Administration on August 28, 1945, and received by the defendant on August 30, 1945. This action was filed by the Government on September 25, 1945, without knowledge that the defendant had complied with the regulation, and the defendant contends that its actions should not be construed as an indication of bad faith or a desire to flout the regulation.

■ It is, therefore, the duty of the court to consider all the factors that exist and in its discretion, to then ascertain

whether the issuance of an injunction would insure better compliance in the future and be for the best interests of the public generally. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

Since in this case the defendant has fully complied with the regulations of the Office of Price Administration, and no overcharge was at any time made by the defendant for the leasing or renting of said equipment, it is the belief of the court that it would be unjust to presently grant the injunctive relief.

An injunction is used only to stop existing or threatened violations, and not to punish past offenses. Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587; Walling v. Shenandoah-Dives M. Co., 10 Cir., 134 F.2d 395; Brown v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689.

I am convinced the defendant has displayed good faith and diligence to presently comply with the law, and the issuance of an injunction presently would not insure better compliance and would be unjust and not in the public interest. Bowles v. Huff et al., 9 Cir., 146 F.2d 428.

A court of equity need not afford an injunction to prevent in the future that which in good faith has been discontinued before the commencement of a suit, in the absence of any evidence that the offense will be, or is likely to be, repeated in the future. There should be some basis for an injunction besides suspicion or ungrounded fear that the defendant will repeat the wrong or wrongs in the future. Bowles v. Huff et al., 9 Cir., 146 F.2d 428, at page 431; Bowles v. Carnegie-Illinois Steel Corp., 7 Cir., 149 F.2d 545, at page 547; Bowles v. Cohn, D.C., 57 F.Supp. 306.

However, under the Emergency Price Control Act, the cessation of violations, whether before or after the institution of suit by the Administrator, does not bar the issuance of an injunction, but the type of order and whether one should issue is being exercised by this court in the light of the large objectives of the Act, that of all the consequences of war and economic adjustment during the post-war period, none is more hazardous than inflation and that delay or indifference would be fatal. Bowles v. Warner Holding Company, D.C., 60 F.Supp. 513.

The court has considered the following principles in deciding that the injunction should not presently be issued:

1. That the equities of the case are not in favor of the Government.

2. That the purpose of an injunction is not to punish a guilty party for past violations, but to prevent his future non-compliance.

3. The issuance of the injunction, admitting past non-compliance, should depend upon whether there is a reasonable likelihood of violations in the future.

4. Will more good or harm result from the issuance of the injunction prayed for?

Since the defendant has shown a present willingness to comply and to cooperate in the future, which he is legally bound to do, and a court of equity has the power to mould each decree to the necessities of each particular case, the complaint for injunctive relief is being presently dismissed with the right, however, being given to the Administrator, on reasonable notice to the defendant and a showing that the defendant has failed or neglected to continue to comply with said Regulation, or a showing that violations of the Act have been resumed, to again apply to the court for appropriate injunctive relief. Brown v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689; Bowles v. Cohn, D.C., 57 F. Supp. 306; Bowles v. W. T. Grant Co., D. C., 57 F.Supp. 773; Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; and Bowles v. 870 Seventh Ave. Corp., 2 Cir., 150 F.2d 819.

The prayer of Chester Bowles, Price Administrator, Office of Price Administration, for the granting of injunctive relief against the McCrady Construction Company, defendant, is presently denied. Provided, however, that said proceeding shall remain on the docket in the Office of the Clerk of Courts, with the right given to the Administrator of the Office of Price Administration, on reasonable notice being given to the defendant that violations of the Act have been resumed, to again apply to the Court for injunctive relief, at which time additional and appropriate consideration will be given the facts which are then presented.

The defendant is directed to pay the costs which have accrued to date in connection with said proceeding.