# Whether Members of the Sentencing Commission Who Were Appointed Prior to the Enactment of a Holdover Statute May Exercise Holdover Rights Pursuant to the Statute

Statutory provisions that allow members of the United States Sentencing Commission to hold over in office after their terms have expired apply to incumbent members who were appointed prior to the enactment of the holdover statute

Commissioners who were appointed prior to the enactment of the holdover statute may constitutionally exercise such holdover rights without violating the Appointments Clause.

April 5, 1994

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

## BACKGROUND AND SUMMARY

On August 26, 1992, President Bush signed "An Act to amend [28 U.S.C. § 992] to provide [that] a member of the United States Sentencing Commission whose term has expired may continue to serve until a successor is appointed or until the expiration of the next session of Congress." Act of Aug. 26, 1992, Pub. L. No. 102-349, 106 Stat. 933 (1992) (codified at 28 U.S.C. § 992(b)) ("the holdover statute"). This memorandum addresses whether members of the Sentencing Commission ("Commission") who were in office at the time the holdover statute was enacted may exercise holdover rights pursuant to the statute.

We first address whether Congress intended the holdover statute to apply to commissioners who were appointed prior to its enactment. The plain meaning of the holdover provision belies any claim that it does not apply equally to incumbent commissioners and to newly appointed commissioners. By its own terms, it applies to any "voting member of the Commission whose term has expired" regardless of when the member was appointed. *Id.* Only by consulting the legislative history does any ambiguity arise regarding its application to incumbent commissioners. Even then, the legislative history of the holdover provision and the presidential signing statement provide inconclusive evidence of intent. Assuming that an examination of the legislative history is appropriate, there simply is insufficient evidence to disregard the plain meaning of the holdover provision.

We next address whether the holdover provision is constitutional as it applies to commissioners who were appointed before its enactment. As applied to such commissioners, the holdover provision raises questions under the Appointments Clause of the Constitution. It may be argued that the holdover provision interferes

33

with the President's appointment power because it extends the terms of office of appointees beyond that contemplated by the appointing authority and amounts to a legislative reappointment. Although this issue is not entirely free from doubt, we conclude that the particular holdover provision at issue would survive an Appointments Clause challenge. In sum, we conclude that the commissioners serving at the time the provision became law on August 26, 1992 may (like those appointed after the provision was adopted) constitutionally exercise holdover rights pursuant to the statute.

## I.

The threshold issue requires us to construe the holdover provision to determine whether it applies to commissioners who were serving at the time of its enactment. The holdover provision provides that:

> Section 992(b) of title 28, United States Code, is amended to read as follows:
>
> * * *
>
> "(2) A voting member of the Commission whose term has expired may continue to serve until the earlier of—
> "(A) the date on which a successor has taken office; or
> "(B) the date on which the Congress adjourns sine die to end the session of Congress that commences after the date on which the member's term expired."

106 Stat. at 933. The text of the holdover provision does not distinguish between commissioners appointed before or after its enactment. By its own terms, it applies to any "voting member of the Commission whose term has expired" without reference to when the member was appointed. Although the text of the holdover provision contains no language either raising or addressing the question of whether it applies to a commissioner who was serving at the time of its passage, such a commissioner is a "voting member of the Commission" and one "whose term has expired," and thus is unquestionably within the plain meaning of the terms of the holdover statute.

The Supreme Court has instructed that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (second set of brackets in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). *See also INS v. Cardoza-Fonseca*, 480 U.S. 421, 432

and n.12 (1987) (where "the plain language of [the] statute appears to settle the question. . . . [W]e look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses"). In his signing statement, President Bush cited a portion of the legislative history of the holdover provision and rejected the plain reading of the statute. *See infra*. After examining the legislative history of the holdover provision, we conclude that President Bush was mistaken in his statement about its legislative history and that a careful reading of the legislative history as a whole provides no support for rejecting the plain meaning of the statute.

The legislative history of the holdover statute contains, at most, some ambiguous evidence of congressional intent. The text of the holdover provision is contained in the only section of the statute. When the bill was introduced in the Senate, it also contained a second section that provided:

> Sec. 2. EXTENSION OF TERMS OF PRESENT MEMBERS OF THE COMMISSION
>
> The amendment to [28 U.S.C. § 992(b)] contained in section 1 of this Act shall apply to the term of any voting member of the Commission whose term expires on October 31, 1991.

S. 1963, 102d Cong., § 2 (1991). The same provision was contained in the bill when it was reported out of committee. On January 31, 1992, Senate Majority Leader Mitchell sought and received unanimous consent to consider passage of the bill immediately. 138 Cong. Rec. 1166 (1992). At that date, the event specified in section two (the expiration of two commissioners' terms on October 31, 1991) had already occurred. Rather than alter section two, an amendment was offered on behalf of the bill's sponsors, the Chairman and Ranking Minority Member of the Judiciary Committee, to strike section two of the bill entirely. *Id.* Without any discussion, the amendment striking section two was approved (by unanimous consent) and then the bill as amended was passed by unanimous consent. *Id.*

The Senate's decision to strike all of section two rather than to amend it to cover other sitting commissioners is subject to different interpretations. Based on the future verb tense "expires" rather than the past tense "expired" in draft section two, it can be inferred that the sponsors of S. 1963 originally hoped to introduce and pass the bill prior to October 31, 1991. It could be argued that the sponsors thought that it was important to provide in the text that the holdover provisions in section one applied to these commissioners whose terms would soon expire because they believed that section one, in and of itself, might not apply to commissioners who were then serving on the Commission. If that were the case, however, it seems curious that they would want to grant holdover rights only to the commis-

sioners whose terms expired in October of 1991 and not to any of the other incumbent commissioners. It is also possible that at the time the Senate deleted section two, it simply realized that it could do nothing for the commissioners whose terms had *already* expired but that it assumed section 1 would apply to all of the then incumbent commissioners whose terms of office had not yet expired. These conflicting arguments based on the Senate's deletion of section two are difficult to reconcile, which suggests that placing much reliance on them is not warranted.

The signing statement issued by President Bush reflects a misinterpretation of the Senate's action in deleting section two. The signing statement states that:

> Today I am signing into law S. 1963, which permits Members of the United States Sentencing Commission whose terms have expired to continue to serve until either a successor takes office or the next session of the Congress ends.

> The legislation does not specify whether it would apply to the current Members of the Commission. Were the Act read to apply to the current Members, it would appear to violate the Appointments Clause of the Constitution by, in effect, permitting the Members to extend the terms of the office to which they were appointed by the President and confirmed by the Senate. Accordingly, I sign this legislation based on my understanding that it applies only to appointments made after the date of enactment of the Act, so as not to infringe on my constitutional appointment authority. This is in keeping with the well-settled obligation to construe ambiguous statutory provisions to avoid constitutional questions.

> *I note that this interpretation of the Act is supported by the fact that the Senate deleted from the Act a provision that would have expressly applied it to current Members of the Commission.*

Statement of President George Bush Upon Signing S. 1963, II Pub. Papers 1432 (Aug. 31, 1992) (emphasis added).

There are two problems with giving much weight to President Bush's signing statement. In general, the use of presidential signing statements by the courts and others as evidence of legislative history and the weight to be given such evidence — if it is to be given any weight at all — is controversial. *See The Legal Significance of Presidential Signing Statements*, 17 Op. O.L.C. 131 (1993) (discussing arguments for and against such use of presidential signing statements). Moreover, we believe President Bush's signing statement quoted above is subject to even less weight than is normally appropriate because it is based on a misreading of the legislative history. It simply is not true "that the Senate deleted from the Act a provi-

sion that would have expressly applied it to [then] current Members of the Commission." II Pub. Papers at 1432. The deleted section *only* applied to commissioners whose terms had *already* expired when the section was deleted; it did *not* apply to those then serving as commissioners whose terms would expire after enactment of the law. That fact makes questionable the inference drawn in the signing statement.

Two other statements of congressional intent are contained in the House report on S. 1963. H.R. Rep. No. 102-827, at 3 (1992). The section-by-section analysis describes the effect of the holdover statute:

> Section 1 of S. 1963 (the bill's only section) amends 28 U.S.C. 992(b) to provide for a voting member of the United States Sentencing Commission whose term has expired to continue to serve beyond the expiration date until a successor has taken office or until the end of [Congress's next] session . . . . No distinctions between types of voting members is intended; this provision is intended to apply to all voting members of the Sentencing Commission, including those appointed to fill a vacancy that occurs before the expiration of the term. *In addition, the section is intended to have prospective application only.*

*Id.* (emphasis added). The underlined language of the House report is also ambiguous. One possible meaning of "prospective application only" is that the holdover statute would apply to commissioners who were appointed to serve on the Commission in the future but not to commissioners who were already serving on the Commission. Another possible meaning of "prospective application only" is that the holdover statute could not be invoked by a commissioner whose term had already expired, i.e., the commissioners whose terms had expired in October of 1991. This second proposition is obviously true. If a commissioner's presidential commission had expired, nothing short of a renomination, reconfirmation, and reappointment consistent with the Appointments Clause would allow the former commissioner to serve again on the Commission. Thus, this statement in the House Report, which is subject to two reasonable but different interpretations, is to no avail in resolving the interpretive question.

There is some unambiguous evidence in the legislative history to support the plain meaning of the holdover provision. The congressional purpose in passing the holdover statute, as expressed in floor statements and the House Report, would apply equally to sitting commissioners and future members of the Commission.[1] The House Report explained that the problem of vacancies on the Commission was exacerbated by "the requirement that sentencing guidelines be promulgated or

---

[1] *See* H. R Rep. No 102-827, at 2-3, 138 Cong Rec 23,098-99 (1992) (statements of Reps. Schumer and Sensenbrenner)

amended with the support of at least four of the seven authorized voting members of the Commission. Consequently, whenever there is less than a full complement of sentencing commissioners, the work of the Commission may be impaired." H.R. Rep. No. 102-827, at 2. The House Report also related that:

> On October 31, 1991, the terms of three voting members of the Commission expired with no successors having been nominated. Two of these terms remain unfilled at the time of the writing of this report — more than eight months later. * * * In 1989-90, the Commission was forced to operate approximately seven months with only four voting members. * * * *This legislation is necessary to ensure that this situation is not repeated whenever commissioners' terms expire in the future.*

*Id.* (emphasis added).

The situation that Congress was attempting to prevent would exist now if the holdover statute did not apply to commissioners who were appointed prior to the statute's enactment. For this reason, we believe the legislative history of the holdover provision, on balance, reinforces the plain meaning of the statute. At worst, the legislative history is ambiguous regarding whether Congress intended the holdover statute to apply to commissioners who were appointed before it was passed. It is simply not conclusive enough to reject the plain meaning of the statute.

We do not believe that "the well-settled obligation to construe ambiguous statutory provisions to avoid constitutional questions," to which President Bush referred in his signing statement, is to the contrary. II Pub. Papers at 1432. We may not avoid all constitutional questions whenever a statutory ambiguity exists. The Supreme Court has instructed instead that statutes should be read, when fairly possible, to avoid grave and doubtful constitutional questions. *See Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score") (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)). To begin with, we are not convinced that the interpretation of the statute in President Bush's signing statement is "fairly possible." This is because such an interpretation would violate another canon of construction, the plain meaning rule, and was based on an erroneous reading of the legislative history.

Moreover, to satisfy the canon of construction articulated in *Rust*, one interpretation of the statute must be necessary to avoid a "grave and doubtful constitutional question[]." *Id.* at 191 (quoting *United States v. Delaware and Hudson Co.*, 213 U.S. 366, 408 (1909)). The Supreme Court has explained that although this canon is followed "out of respect for Congress, which [is presumed to] legislate[] in the light of [its] constitutional limitations, . . . avoidance of a difficulty will not be

pressed to the point of disingenuous evasion." *Id.* (quoting *Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933)). In *Rust*, for example, the Court concluded that the constitutional questions were not so doubtful that it should read the statute as precluding the questions. *Id.* As we explain in part II, we do not believe that the constitutional question is so grave and doubtful that we should evade answering it.

We conclude that the holdover provision does apply to commissioners who were appointed prior to its enactment. By its own terms, the text of the holdover provision applies to any "voting member of the Commission whose term has expired," regardless of when the member of the Commission was appointed. We also find support for this interpretation in the legislative history of the holdover provision. Although the legislative history contains some ambiguous evidence of legislative intent, we simply cannot say that it is sufficient to reject the plain meaning of the statute.

## II.

We next address whether the application of the holdover provision to commissioners who were appointed before its enactment violates the Appointments Clause. The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate shall appoint . . . [principal] Officers of the United States." U.S. Const. art. II, § 2, cl. 2. It further provides that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* The Commission is "an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). *See also Mistretta v. United States*, 488 U.S. 361, 368, 384-94 (1989). The Commission's seven voting members are appointed by the President "by and with the advice and consent of the Senate." 28 U.S.C. § 991(a).

The Appointments Clause by its terms and its structure prohibits Congress from itself exercising the power to appoint "Officers of the United States." *See Buckley v. Valeo*, 424 U.S. 1, 126-28, 139 (1976) (per curiam). The text and structure of the Constitution reflect a deliberate constitutional choice to deny to the legislature the power to select the individuals who exercise significant governing authority as (non-legislative) officers of the federal government. *See id.* at 128-31 (reviewing the debates in the Philadelphia convention). That choice can be set at naught either by legislation overtly vesting in Congress the power of appointment or by statutes that functionally enable Congressional exercise of a power to appoint. This latter concern arises most pointedly in connection with statutes that attempt to extend the fixed tenure of an officer with a set term, thus denying the President the power he would otherwise have to reappoint the officer or select someone else.

In 1951, for example, the President requested the Justice Department's views on the validity of a statute extending the terms of the members of a commission: ac-

cording to the original legislation creating the commission, the terms were to expire in June 1951, but prior to that date Congress amended the legislation to extend the commissioners' tenure to August 1952. Acting Attorney General Perlman advised the President that while he did not think "there can be any question as to the power of the Congress to extend the terms of offices which it has created," that legislative power was subject "to the President's constitutional power of appointment and removal." *Displaced Persons Commission — Terms of Members*, 41 Op. Att'y Gen. 88, 90 (1951). However, because the legislation did not attempt to restrict the President's authority to remove the commissioners at will, it was constitutionally harmless: the President remained free to exercise his appointment power simply by removing the incumbents from office. *Id.* ("As so construed, the [extension legislation] presents no constitutional difficulties").[2] *See also Pension Agents and Agencies*, 14 Op. Att'y Gen. 147 (1872) (discussing the President's power to remove officer serving a term extended by statute).

We think that the Department's 1951 opinion adopted the correct approach to this issue: while the power to lengthen the tenure of an incumbent officer is incident to Congress's general power to create, determine the duties of, and abolish offices,[3] that power cannot legitimately be employed to produce a result that is, practically speaking, a congressional reappointment to office or a removal from office. This problem is not presented where a statutory change in the term of office is applied to subsequent appointees, for the appointing authority in the latter case appoints to an office that includes the potential for holdover as one of its attributes. Where a statutory change in the term of office is applied to incumbent officers, however, we must analyze the statute to determine whether it amounts to a legislative exercise of the executive's appointment powers.

The situation presented by the holdover statute at issue is on a continuum between legislation that we would view as non-objectionable and legislation we would view as constitutionally questionable. On one end of the continuum is a statute that extends the terms of officers whose appointment is vested in the President alone and who serve at the will and pleasure of the President. The extension of these officers' terms does not interfere with the appointing authority's (here, the President's) power to terminate or reappoint a given officer. Such legislation adjusts the interval at which the President must either make another appointment or face a vacancy, but does not infringe the appointment power. The President can terminate and replace the person who is serving in the office at any time, notwith-

---

[2] *Cf In re Benny,* 812 F 2d 1133, 1142-43 (9th Cir. 1987) (Norris, J , concurring in the judgment): "[T]he Appointments Clause precludes Congress from extending the terms of incumbent officeholders I am simply unable to see any principled distinction between congressional extensions of the terms of incumbents and more traditional forms of congressional appointments Both implicate the identical constitutional evil—congressional selection of the individuals filling nonlegislative offices."

[3] *See Crenshaw v. United States,* 134 U S. 99 (1890), *Civil Service Retirement Act — Postmasters — Automatic Separation From the Service,* 35 Op. Att'y Gen 309, 314 (1927): "If, as stated in [*Embry v United States,* 100 U S 680 (1879)], Congress may at any time add to or take from compensation fixed, it may also, it would seem, by analogy, at any time shorten or lengthen a term of office "

standing the term extension. Approaching the other end of the continuum is a statute that lengthens the fixed terms of officials who can be removed only for cause, thus depriving the appointing authority of the opportunity to reappoint the incumbent or to chose someone else. In sum, the extension of tenure of officers serving at will raises no Appointments Clause problem, but lengthening the term of an officer who may be removed only for cause is constitutionally questionable.[4]

However, this conclusion, which we think sound in principle, has been partly rejected, at least in one context, by the courts. Congress's extension of the tenure of bankruptcy judges (who can be removed only for cause) in the Bankruptcy Amendments and Federal Judgeship Act of 1954 has been sustained repeatedly against constitutional challenge. The leading case, *In re Benny*, held that a statutory extension of tenure "becomes similar to an appointment" *only* "when it extends the office for a very long time." 812 F.2d at 1141. *See also In re Investment Bankers*, 4 F.3d 1556, 1562, 1563 (10th Cir. 1993) ("Although plausible arguments can be raised in response to the reasoning adopted by the *Benny* court, we are ultimately persuaded that this reasoning is correct;" noting that the Appointments Clause challenge "has been rejected by every court that has considered it"); *Matter of Koerner*, 800 F.2d 1358, 1366-67 (5th Cir. 1986) ("Congress has the constitutional power to make reasonable changes in the duties of any office it creates, including shortening or lengthening the term of service. . . . Under the limited circumstances of this case, . . . the action of Congress was a constitutionally reasonable change in the term of an existing office") (citations omitted). Although we are not persuaded by *Benny*'s reasoning, we must acknowledge that the courts may follow *Benny*'s conclusion in analogous situations.[5] In light of the fact that *Benny*

---

[4] In 1987, this Office opined that legislation extending the terms of the certain members of the United States Parole Commission was an unconstitutional interference with the President's appointments power. *See Reappointment of United States Parole Commissioners*, 11 Op. O L C 135 (1987) If, as we think likely under the rule of *Wiener v United States*, 357 U.S 349 (1958), the Commissioners were removable only for cause, that conclusion was consistent with the earlier views of the Attorneys General, which we believe are sound. However, the analysis in the opinion suggests that the extension legislation was invalid *because* the Commissioners were "purely executive officers," *id.* at 352, removable (presumably) by the President at will, a line of reasoning with which we disagree The opinion might be read to suggest that extension legislation concerning officers removable only for cause is *not* unconstitutional That conclusion may be dictated by judicial precedent, *see infra*, but the reasoning would be contrary to our view of the better interpretation of the Appointments Clause.

[5] *Benny* stated that *Wiener* implicitly rejected any Appointments Clause problem with term-extension legislation, but that overreads the decision The date on which the President removed the plaintiff in *Wiener* from office was in fact *within* the term of office for which the plaintiff was originally appointed, although part of the back pay the plaintiff ultimately recovered was for a period after his original term would have expired. *See* 357 U S. at 350-51 (the term should have expired on March 1, 1954 as the law stood at the time plaintiff was appointed, the President removed plaintiff on December 10, 1953; plaintiff recovered back pay for four months after March 1, 1954 under a post-appointment extension of term) The additional Supreme Court cases that *Benny* and other courts have cited are distinguishable. *See, e g , Benny*, 812 F.2d at 1141 (citing *Shoemaker v United States*, 147 U S 282 (1893), which upheld legislation imposing additional duties on an officer), *In re Tom Carter Enters* , 44 B.R. 605, 607 (Bankr. C.D. Cal 1984) (citing *Shoemaker* and cases dealing with issues under the Contracts Clause and the Philippine Organic Act) *Benny* also pointed out that the First Congress twice extended the tenure of the first Postmaster General. 812 F.2d at 1142. While we agree that this fact supports the argument that Congress generally possesses the power to

does not rule out an Appointments Clause objection to legislation giving tenure for extraordinary long terms to incumbent officers removable only for cause, we believe that a short term holdover provision is likely to be upheld by the courts.

As we explained above, the holdover statute at issue is, constitutionally, somewhere in between the situations we believe represent the two extremes. Although the voting members of the Commission do have tenure protection and new members of the Commission must receive the advice and consent of the Senate before they are appointed, the secured or "guaranteed" terms of office of hold-over members are not being lengthened. The holdover provision simply allows them to continue to serve in office after their terms have expired until the earlier of two events: "(A) the date on which a successor has taken office; or (B) the date on which the Congress adjourns sine die to end the session of Congress that commences after the date on which the member's term expired." 106 Stat. at 933.

We must determine whether this change in the incumbent commissioners' service effectively frustrates the President's appointment power or confers on the Legislature a reappointment power (albeit for a short period of time). As to the first issue, the President's formal appointment power is not affected in the least. He may nominate whomever he wants at precisely the same time as he could before, presumably in advance of the expiration of the term he is seeking to fill. Moreover, it is not even clear that the effect of the holdover provision is to limit the discretion of the Executive, since it gives the President the option of retaining the holdover officer until he chooses to nominate a successor. In short, it is not clear whether the appointing authority's power is augmented or diminished by a holdover statute that applies to incumbent office holders. *See FEC v. NRA Political Victory Fund*, 6 F.3d 821, 824 (D.C. Cir. 1993) (holding that the NRA's challenge to the alleged restriction on the President's appointment power to select more than three commissioners from one party is not justiciable because "it is impossible to determine in this case whether the *statute* actually limited the President's appointment power[;] . . . we [cannot] assume [] that the President wished to appoint more than three members of one party").

The only problematic effect we see that the holdover statute could have on the President's power of appointment is that the Senate might be less inclined to act on a nomination for bureaucratic or institutional reasons, such as a less pressing need to act on a nomination where there is a holdover, or for political or inter-branch advantage. But all of these reasons for Senatorial inaction are present for commissioners who are appointed *after* the holdover statute is enacted, and there can be no reasonable argument that the holdover statute as applied to subsequent appointees is unconstitutional. It is simply not persuasive to argue that the President's appointment power is effectively frustrated when incumbent commissioners hold over but not when subsequent commissioners hold over.

---

extend terms, the original Postmaster General served at the pleasure of the President, and thus the First Congress's actions placed no practical limitation on the appointments power

With regard to Congress, we must still consider whether the application of a holdover provision to incumbent officer holders with tenure protection amounts to a legislative designation or legislative reappointment. Once again, there is no legislative reappointment in granting future appointees holdover rights because when the President makes a future appointment the holdover provision simply defines one of the attributes of the office to which the appointment is made. However, in his concurrence in *Benny*, Judge Norris argued that the problem with extending the terms of incumbents lies in the fact that Congress can review the track record of the incumbents and manipulate the tenure of officials it likes and dislikes. 812 F.2d at 1143-44. As Judge Norris argued in the context of extending the fixed term of bankruptcy judges:

> Congress can dictate with certainty who occupies an office by extending the terms of known incumbents. ... By extending the terms of known incumbents, Congress can guarantee that its choices will continue to serve for as long as Congress wishes, unless the officers can be removed. Thus, congressional extension can effectively block the exercise of appointing power by the only officials constitutionally authorized to exercise it—officials of the *other* branches of government. Selective exercise of this extension power could prove to be a potent political weapon. For example, if Congress wished to prevent the executive or judicial branch from filling an office about to become vacant with an appointee unfavorable to the prevailing congressional majority party, it could simply extend the incumbent's term until a more favorable group of officials took control of either the executive or judicial branch. * * * In effect, extension statutes allow Congress to arrogate to itself one of the powers of appointment—the power of reappointment. Indeed, it is hard to see any distinction between the congressional extension at issue here and a statute expressly authorizing congressional reappointment of incumbents.

*Id.* (emphasis in original).

Judge Norris was in the minority in *Benny*, and furthermore, there are several important differences between the extension statute he was considering and the holdover statute we are considering. For Congress to extend the tenure of a known incumbent by means of a holdover statute beyond that desired by the President, Congress not only would have to pass a holdover statute, over the President's veto if necessary, but the Senate would also have to cooperate in refusing to confirm the President's subsequent nominee. Such bad faith concerted action is too speculative and hypothetical a basis to support a claim of unconstitutionality. *Cf. NRA Political Victory Fund*, 6 F.3d at 824-25 (holding not justiciable the NRA's separation

43

of powers claim that the President would have appointed other commissioners but for the political party restriction in the statute).

There are two other important limitations on the Congress's power to frustrate the President's appointment power by means of this holdover statute. One limitation is that the office probably is vacant for Recess Appointments Clause purposes, and the President probably would be able to make a recess appointment to fill the position whenever the Senate is in recess for the requisite length of time.[6] *See* U.S. Const. art. II, § 2, cl. 3 ("The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."). The Department of Justice has long interpreted the term "Recess of the Senate" to include intrasession recesses if they are of substantial length.[7] There usually is a recess of the Senate of sufficient length to satisfy the constitutional standard in August and December of each year.

The Sentencing Commission holdover statute, moreover, contains its own time limit. In *Benny*, the Ninth Circuit held that an extension of a term of short duration did not constitute a congressional appointment:

> Congress'[s] power to extend prospectively terms of office can be implied from its power to add to the duties of an office other duties that are germane to its original duties. *Shoemaker v. United States*, 147 U.S. 282, 300-01 (1893). Logically, the only point at which a prospective extension of term of office becomes similar to an appointment is when it extends the office for a very long time. . . . [A] short extension, like the one at issue here [as much as a six year extension, does not] prevent[] those who have the appointment power from exercising that power.

---

[6] There may be some question, however, whether the position being filled by the holdover officer is vacant for recess appointment purposes *Compare Staebler v. Carter*, 464 F. Supp. 585, 588-601 (D.D C 1979) (holding that the FEC office was vacant for Recess Appointments Clause purposes when the incumbent continued to exercise authority pursuant to a holdover provision that provided that "[a] member of the Commission [FEC] may serve on the Commission after the expiration of his term until his successor has taken office") *with Mackie v. Clinton*, 827 F. Supp. 56, 58 (D.D.C. 1993) (whether a vacancy exists for Recess Appointments Clause purposes depends on the wording and structure of the particular holdover provision, deciding that the Postal Service holdover provision did not create a vacancy) The Sentencing Commission holdover statute has features in common with the holdover statutes in both *Staebler* and *Mackie*. Although the Sentencing Commission holdover statute is similar to the wording of the statute in *Staebler* in two respects, there is a limitation on the length of time that the incumbent can hold over, which the court in *Mackie* said was important in deciding that a vacancy did not exist in the office. Thus, in the present case, it is unclear whether courts would hold that the President could exercise his recess appointment power to oust a holdover commissioner and fill the vacancy. We believe that the better view is that this holdover statute creates a vacancy for purposes of the Recess Appointments Clause

[7] *See generally Executive Power — Recess Appointments*, 33 Op Att'y Gen. 20 (1921) (opining that the President had the power to make recess appointments during an intrasession recess of the Senate lasting from August 24 to September 21, 1921); *Recess Appointments During an Intrasession Recess*, 16 Op O L C. 15 (1992), *Intrasession Recess Appointments*, 13 Op O L C. 271 (1989); *Recess Appointments Issues*, 6 Op O L C 585 (1982).

812 F.2d at 1141 (parallel citation omitted). Judge Norris disputed the short/long distinction and the majority's reliance on *Shoemaker*. He argued that:

> The congressional power to expand the duties of an existing office is subject to a reasonable and relatively clear limitation: Congress may not devolve upon an officeholder responsibilities which are not germane to his existing duties [citing *Shoemaker*]. When Congress merely adds duties to an office that are germane to the officeholder's existing duties, Congress has simply expanded the power of an official in the field and for a period of time in which a *valid* appointing authority has already entrusted him to act. The interference with the appointing authority's choice of personnel is marginal. By contrast, it is apparent from reading the majority opinion that there is no principled or coherent limitation on the power to extend an incumbent's term of office. * * * I fail to see how a line can be drawn between "short" and "long" extensions on any principled basis. The same constitutional evil the majority finds inherent in "long" extensions . . . is also present with short extensions. It is merely present for a shorter period of time.

*Id.* at 1145.

Although we are not prepared to articulate the precise line at which an extension would effect a congressional appointment, we do not share Judge Norris's skepticism either. In contrast to the hypothetical cases Judge Norris writes about where there is no "principled or coherent limitation" on extending the term of office, there is a "reasonable and relatively clear limitation" in the Sentencing Commission holdover statute. In fact, we think that the time limit in the Sentencing Commission holdover statute serves the same function, and is a close proxy for, "germaneness" as that concept is used when Congress expands the duties of an existing office. If the "interference with the appointing authority's choice of personnel is marginal" where additional but germane duties are added, we do not see any reason why the interference is greater, at least in a constitutional sense, for holdover provisions of short duration. We do not need to address the precise point at which an extension becomes impermissibly long, because we are satisfied that the time limit chosen by Congress in the Sentencing Commission holdover statute is shorter than the time limit in *Benny* and comes with a venerable pedigree. The time limit in the holdover provision at issue is almost identical to the one in the Recess Appointments Clause. The Framers provided that the President alone could fill vacancies in principal offices for this length of time without receiving the advice of the Senate. In other words, they decided that keeping the government running for this length of time was more important than adhering to the formalities of the Appointments Clause. We conclude that this time limit is also a reasonable

length within which Congress may by law keep independent agencies running until the appointing authority fills the position at issue.[8]

## III.

In summary, we conclude that the holdover statute applies to the members of the Commission who were appointed prior to its enactment. We also conclude that such commissioners may hold over without violating the Appointments Clause, because the President remains free to appoint a successor who, upon confirmation, would displace the holdover and because there is a reasonable limit to the period during which they can serve as holdover commissioners.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] We do not address other hypothetical statutes that are not neutral in their application For example, we do not address a statute that would create or repeal holdover provisions for selective members of the same commission or for classes of members on the same commission, e.g., those appointed on a certain date or those from a particular political party Such statutes might amount to a prohibited congressional designation, even if the holdover period is for a short period of time